# IN THE SUPREME COURT OF IOWA

No. 10–0760

Filed August 19, 2011

**STATE OF IOWA,**

Appellee,

vs.

**ALAN LEE WATTS, JR.,**

Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes (motion to suppress) and Paul L. Macek (bench trial), Judges.

Alan Lee Watts, Jr. appeals his convictions on two counts of possession with the intent to deliver, two counts of drug stamp tax violations, and one count of possession of drug paraphernalia. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, Dennis D. Hendrickson, Assistant Appellate Defender, and Mary K. Conroy, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly Cunningham, Assistant County Attorney, for appellee.

**MANSFIELD, Justice**.

Alan Lee Watts, Jr. appeals his drug-related convictions, contending the district court erred in denying his motion to suppress evidence obtained from searching his apartment. Although we find the initial warrantless sweep of Watts' apartment was unlawful due to a lack of exigent circumstances, we nonetheless affirm his convictions. The officers later procured a warrant to conduct a full search of the apartment, the evidence in question was located during that search, and the State has demonstrated that the warrant would have been sought and granted even without the information from the earlier improper sweep.

### I. Background Facts and Proceedings.

On May 5, 2009, a special agent with the division of narcotics enforcement in Davenport performed a routine traffic stop and discovered marijuana. The driver of the stopped vehicle was questioned and admitted to the special agent that he had obtained the marijuana from "a subject" residing at 7110 Hillandale Road, apartment 12. The driver further stated "the subject" had a large quantity of marijuana inside the apartment.

The special agent relayed the information to Corporal Gil Proehl and Detective Scott Lansing of the Davenport Police Department. They proceeded to the Hillandale address to investigate. The apartment in question was situated in a three-story building that had four apartments on each floor. A common hallway on each floor separated two apartments on each side and connected to front and back staircases. The common hallway was also split in half by a door with two apartments on each side of the doorway. Apartment 12 was located in the southeast corner of the third floor.

Officers Proehl and Lansing ascended to the third floor via the west stairwell. As the officers opened the common hallway door leading to apartments 11 and 12, they immediately noticed a strong smell of raw marijuana. Detective Lansing sniffed the door jambs to apartments 11 and 12 and concluded the odor was clearly emanating from apartment 12. Detective Lansing could also hear a television playing inside apartment 12. At that time, Officers Proehl and Lansing asked two other officers who were waiting downstairs to come up and discuss how to proceed. The four officers decided to conduct a "knock and talk," an investigatory technique in which law enforcement officers knock on the door of a dwelling seeking voluntary conversation and eventually consent to search. *See, e.g.*, *State v. Reinier*, 628 N.W.2d 460, 466 (Iowa 2001).

Detective Lansing knocked on the door and Watts answered. As soon as Watts opened the door, an overpowering odor of raw marijuana wafted out of the apartment. When Detective Lansing identified himself as a police officer, Watts attempted to go back into the apartment and shut the door. At this time, the officers detained Watts, took him into the hallway, and secured him with handcuffs. The officers then entered the apartment. During a protective sweep of the apartment, the officers saw marijuana, packaging materials, and paraphernalia (including a large water bong) in plain view in the living room. No other persons were present in the apartment.

After performing the sweep, Officer Proehl provided *Miranda* warnings to Watts and requested consent to search the apartment fully. Watts initially said "he was caught," but did not provide unequivocal consent. Therefore, Detective Lansing prepared an application for a search warrant for the apartment.

The narrative portion of the warrant application began:

> On 5-5-09 members of the Tactical Operations Bureau, Davenport Police Department received information that a subject from 7110 Hillandale Road #12 was selling marijuana from the apartment, and had a large quantity [of] marijuana inside the apartment. With this information members of the Tactical Operations Bureau conducted an investigation.

The application then recited the events that occurred after the officers arrived at the apartment. The application also had a standard "informant's attachment" with all boxes checked, but no specifics provided.[1]

Based upon this application, a magistrate approved the requested search warrant. However, in doing so, the magistrate specifically crossed out the "informant's attachment." The magistrate also wrote "none" as to whether there had been reliance on information supplied by a confidential informant.

After obtaining the warrant, the officers performed a full search of the apartment and discovered almost five pounds of marijuana, a grow operation in a bedroom closet with six live plants and a dead plant on a drying rack, scales, grinders, packaging materials, and drug paraphernalia. No drug tax stamps were attached to the marijuana or packaging.

Watts was subsequently charged by trial information with two counts of possession with the intent to deliver in violation of Iowa Code section 124.401(1)(d), two counts of failure to affix drug tax stamps in violation of Iowa Code section 453B.12, and one count of possession of drug paraphernalia in violation of Iowa Code section 124.414 (2009).

On July 17, 2009, Watts filed a motion to suppress, arguing "the search without a warrant was without consent, probable cause or exigent

---

[1]The attachment appears to be an outdated form, not the current form set forth in Iowa R. Crim. P. 2.36 – Form 2.

circumstances, and the search pursuant to a warrant was on information . . . without probabl[e] cause or in the alternative was based on information obtained by the prior unlawful search without a warrant."

On August 19, 2009, a hearing on the motion to suppress was held. Officer Proehl was the only witness to testify, and he described the foregoing events. The district court denied the motion to suppress.

Watts waived his right to a jury trial and proceeded to a bench trial on the minutes of testimony. The district court found Watts guilty on all five charges. Watts was sentenced to five years imprisonment on each of the possession with the intent to deliver charges and the drug stamp violations, all class "D" felonies, as well as thirty days on the drug paraphernalia charge, a simple misdemeanor. *See* Iowa Code §§ 124.401(1)(*d*), 453B.12, 124.414(3). The district court suspended all of the sentences and placed Watts on probation for five years. Watts now appeals the denial of his motion to suppress.[2]

## II. Standard of Review.

Because this case concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo. *State v. Ochoa,* 792 N.W.2d 260, 264 (Iowa 2010). We make an independent evaluation of the totality of the circumstances as shown by the entire record. *Id.*

---

[2]Watts timely filed a notice of appeal, but did not seek discretionary review of his misdemeanor conviction. *See* Iowa Code § 814.6(2)(*d*); *Tyrrell v. Iowa Dist. Ct.,* 413 N.W.2d 674, 675 (Iowa 1987). However, when a defendant has improperly sought review of a ruling by filing a notice of appeal rather than an application for discretionary review, "the case shall not be dismissed, but shall proceed as though the proper form of review had been requested." Iowa R. App. P. 6.108. This court treats the defendant's notice of appeal as a request for discretionary review of his simple misdemeanor conviction and grants the request. Iowa R. App. P. 6.106.

### III. Merits.

**A. Initial Warrantless Entry.** We first consider whether the initial warrantless entry into Watts' apartment violated his constitutional rights under the Fourth Amendment. The Fourth Amendment of the United States Constitution protects individuals against unreasonable searches and seizures. *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001). In determining whether an exception to the warrant requirement applies, "the court must assess a police officer's conduct based on an objective standard." *State v. Simmons*, 714 N.W.2d 264, 272 (Iowa 2006).

Searches conducted without a warrant are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967); *accord Reinier*, 628 N.W.2d at 464. These exceptions include: (1) search based on probable cause coupled with exigent circumstances, (2) consent search, (3) search incident to a lawful arrest, and (4) search of items in plain view. *Naujoks*, 637 N.W.2d at 107. The State has the burden of proving "by a preponderance of the evidence that a warrantless search falls within one of these exceptions." *Id.* at 107–08.

The State concedes it did not have a warrant when the officers initially entered Watts' apartment, but seeks to justify the warrantless entry based upon exigent circumstances: "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S. Ct. 2408, 2414, 57 L. Ed. 2d 290, 301 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456, 69 S. Ct. 191, 193, 93 L. Ed. 153, 158 (1948)).

> Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed.

*State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973). Exigent circumstances must be supported by "specific, articulable grounds." *Naujoks*, 637 N.W.2d at 109. Here the State argues that it needed to enter and clear the apartment because of the possibility of others in the apartment who might either pose a threat to the officers or destroy evidence.

> A "protective sweep" is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory inspection of those places in which a person might be hiding.

*Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276, 281 (1990). In order to justify a protective sweep,

> there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d at 286; *accord State v. McGrane*, 733 N.W.2d 671, 678 (Iowa 2007).

Just as a warrantless entry can be permissible to conduct a protective sweep, the destruction of evidence may also be an exigent circumstance when specific and articulable facts, along with any rational inferences from those facts, would lead a reasonably prudent police officer to believe that the events which are unfolding will cause evidence of crime to be " 'threatened with immediate removal or destruction.' " *State v. Davis*, 383 N.W.2d 524, 526 (Iowa 1986) (quoting *State v. Holtz*, 300 N.W.2d 888, 893 (Iowa 1981)).

The problem with an exigent circumstance theory here, though, is the absence of facts that would have justified a reasonably prudent officer in believing anyone else might be in the apartment. Officer Proehl testified at the suppression hearing that he thought a protective sweep was necessary "because we didn't know if there were any other individuals inside the residence." But nothing indicated another individual *might* be potentially inside the apartment. *McGrane*, 733 N.W.2d at 679. Rather, the information relayed to Officers Proehl and Lansing mentioned only that "a subject" (i.e., Watts) was selling marijuana from the apartment. *See State v. Huff*, 92 P.3d 604, 610 (Kan. 2004) (finding no exigent circumstances to search an apartment after a person smelling of marijuana exited the apartment and was arrested, given "[t]he absence of evidence that someone remained inside").

For the same reasons, the record does not support an inference that drugs were likely to be destroyed. *See, e.g., Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1854, 179 L. Ed. 2d 865, 872 (2011) (noting officers heard movements within the apartment after knocking and announcing their presence).[3] Hence, there was no reasonable fear that evidence would be lost during the time necessary to obtain a warrant. *State v. Holtz*, 300 N.W.2d 888, 893 (Iowa 1981) ("A warrant was required unless ' "an immediate major crisis in the performance of duty" ' afforded neither time nor opportunity to apply to a magistrate." (quoting *Dorman v. United States*, 435 F.2d 385, 391 (D.C. Cir. 1970)));

---

[3]In *Kentucky v. King*, the U.S. Supreme Court held that the Fourth Amendment does not foreclose the government from relying on an exigent circumstances exception where the police allegedly "created" the exigent circumstances, so long as they did not do so by means of an actual or threatened violation of the Fourth Amendment. 563 U.S. at ___, 131 S. Ct. at 1858, 179 L. Ed. 2d at 876. That case, as here, involved a "knock and talk," although once the knock was made the police "could hear people inside moving" and "things being moved inside the apartment." *Id.* at ___, 131 S. Ct. at 1854, 179 L. Ed. 2d at 872.

*see also Latham v. Sullivan*, 295 N.W.2d 472, 478 (Iowa Ct. App. 1980) (suggesting the posting of officers outside the door could have guarded against destruction while a warrant was obtained).

The State maintains the officers were unsure whether the driver of the stopped vehicle was still in custody or released, thus creating the possibility that the driver would warn Watts to destroy or remove the marijuana. However, even assuming this possibility was reasonable (noting, of course, the driver was the one who reported Watts to the police), it still does not provide exigent circumstances because Watts was detained and handcuffed at the time the officers entered his apartment.

Also, marijuana is not a substance that poses "an immediate threat" due to its "volatile nature" to support a finding of exigency. *Cf. Simmons*, 714 N.W.2d at 273 (concluding that when officers smell anhydrous ammonia and have probable cause to believe they have discovered a methamphetamine lab, the serious dangers created by the chemicals can justify an immediate limited search of an apartment to remove the hazardous items in order to protect the officers and others). Accordingly, we find the State has failed to show the sweep of the apartment was reasonable under the circumstances.

In short, the State's exigent circumstances claim boils down to an argument that "we didn't know if there were any other individuals inside the residence," to quote Officer Proehl. But of course, when a suspect is detained outside his or her residence, it is normally *possible* there could be other individuals inside. If this mere possibility, without more, constituted exigent circumstances, it would be tantamount to holding that a warrantless "sweep" of a person's residence could regularly be conducted whenever that person was apprehended at his or her residence. The Fourth Amendment, we believe, requires more. *See*

*Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685, 694 (1969) (rejecting the notion of a warrantless search of a residence incident to arrest). "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency." *King*, 563 U.S. at ___, 131 S. Ct. at 1862, 179 L. Ed. 2d at 881.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639, 653 (1980). Under the facts of this case, the State has failed to show specific, articulable grounds to support a finding of exigent circumstances.

**B. Subsequent Search Pursuant to Warrant.** After the initial warrantless entry, the officers obtained a search warrant and performed a full search of apartment 12. Therefore, we must now determine whether this search was tainted by what the officers observed in plain view during the earlier unlawful entry.

"The exclusionary rule requires the suppression of evidence discovered as a result of illegal government activity." *McGrane*, 733 N.W.2d at 680. To determine whether an improper entry invalidates a subsequent search pursuant to a warrant, we need to consider whether " 'the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.' " *McGrane*, 733 N.W.2d at 681 (quoting *Murray v. United States*, 487 U.S. 533, 542, 108 S. Ct. 2529, 2536, 101 L. Ed. 2d 472, 483–84 (1988)). In making the latter determination, "we excise the illegally obtained information from the warrant application and

determine whether the remaining legally obtained information supports probable cause." *Id.* Stated another way,

> "When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. . . . If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted."

*Naujoks*, 637 N.W.2d at 113 (quoting *James v. United States*, 418 F.2d 1150, 1151, 1152 (D.C. Cir. 1969)); *accord State v. Showalter*, 427 N.W.2d 166, 168 (Iowa 1988).

We have already concluded that the officers were not legally in the apartment when they discovered the marijuana, packaging materials, and paraphernalia in plain view. *See Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112, 123 (1990) (holding one of the requirements of the "plain view" doctrine is that the officer must not have violated the Fourth Amendment in "arriving at the place from which the evidence could be plainly viewed"). Also, the magistrate marked out the "informant's attachment" and indicated that no reliance was being placed on the confidential informant.[4] Nonetheless, the State argues that the "overpowering odor of raw marijuana coming from inside the apartment" (according to the officer's affidavit) and the officer's explanation in the application that he was a narcotics investigator with

---

[4]If the grounds for issuance of a warrant are supplied by an informant, Iowa Code section 808.3 requires that the application "establish the credibility of the informant or the credibility of the information given by the informant." Here the narrative portion of the warrant application stated the Davenport Police Department had "received information that a subject was selling marijuana from the apartment," but it did not explain why the informant or his information was credible. As noted above, the separate "informant's attachment" appeared to be an old form, did not provide specifics, and had every box checked.

two years' experience investigating controlled substances offenses were enough to sustain the warrant by themselves.

Probable cause to search exists if, under the totality of the circumstances, "a person of reasonable prudence would believe that evidence of a crime might be located on the premises to be searched." *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004).

In considering whether the detection of an odor establishes sufficient probable cause for a magistrate to issue a search warrant, the United States Supreme Court has stated:

> If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

*Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 369, 92 L. Ed. 436, 440 (1948).

Our court has followed this reasoning and held that a trained officer's detection of a sufficiently distinctive odor, by itself or when accompanied by other facts, may establish probable cause. *See Simmons*, 714 N.W.2d at 272–73 (smell of anhydrous ammonia drifting from an apartment); *State v. Moriarty*, 566 N.W.2d 866, 869 (Iowa 1997) (smell of burnt marijuana on defendant's person plus the observation of an unused alligator clip hanging from the rearview mirror of defendant's vehicle); *State v. Merrill*, 538 N.W.2d 300, 301–02 (Iowa 1995) (smell of burnt marijuana while defendant exited vehicle coupled with furtive movement); *State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) (smell of marijuana emanating from a vehicle).

In *Simmons*, for example, an officer responded to a complaint of loud music coming from an apartment. 714 N.W.2d at 269. While

standing at the apartment subject to the complaint, the officer smelled what he believed was anhydrous ammonia coming from the apartment across the hall. *Id.* The officer contacted his superior who recommended the officer contact a state-certified clandestine methamphetamine lab expert. *Id.* When the expert arrived, he confirmed the smell to be anhydrous ammonia commonly used in the production of methamphetamine. *Id.* The officers then knocked on the door and a woman asked who was there. *Id.* The officers identified themselves and after receiving no response, forcibly entered the apartment with guns drawn. *Id.* Upon appeal from a motion to suppress, we found the officers had probable cause to believe the occupants of the apartment were engaged in criminal activity based on their "training and experience, coupled with the distinct odor of anhydrous ammonia and the lack of household uses for it." *Id.* at 273.

In this case, upon opening the hallway door at the mid-point of the common hallway, the officers immediately noticed "a strong odor" of marijuana. By sniffing at the door jamb of apartment 12, they could tell the marijuana odor came from that apartment. When Watts opened the apartment door after the officers knocked, the aroma became "overpowering." We find these facts set forth in the warrant application by themselves provided probable cause for issuance of the warrant. *See Merrill*, 538 N.W.2d at 301–02 (noting that a majority of states have held that an odor of marijuana alone may provide probable cause to justify a *warrantless* search); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.6(b), at 311 (4th ed. 2004) [hereinafter LaFave] (stating that "the courts have found probable cause to search when the distinctive odor of marijuana is found emanating from a particular place") (citing cases). *But cf. Huff*, 92 P.3d at 610 (refusing to

validate a subsequent search that occurred after an improper warrantless entry where there was "nothing in the record to demonstrate that the odor came from the apartment rather than Rogers herself").

Notably, many other courts have found that the odor of raw or growing marijuana by itself can provide sufficient probable cause for a search. *See United States v. Charles*, 29 F. App'x 892, 895–96 (3d Cir. 2002) (odor of growing marijuana that was noticeable when the defendant opened the door by itself provided probable cause for issuance of search warrant); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000) (the smell of raw marijuana "created probable cause"); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) (strong smell of raw marijuana provided probable cause); *People v. Cook*, 532 P.2d 148, 150 (Cal. 1975) ("odor of unburned marijuana" amounted to probable cause), *abrogated on other grounds by People v. Doolin*, 198 P.3d 11, 36 n.22 (Cal. 2009); *State v. Gonzales*, 789 P.2d 206, 207 (Idaho Ct. App. 1990) (smell of raw marijuana alone provided probable cause); *State v. Goff*, 239 P.3d 467, 470 (Kan. Ct. App. 2010) ("The smell of raw marijuana alone is sufficient to give an officer both reasonable suspicion and probable cause."); *People v. Kazmierczak*, 605 N.W.2d 667, 669–70 (Mich. 2000) ("Like the majority of courts in other states and jurisdictions, we are persuaded that detection of the odor of either fresh marijuana or marijuana smoke, standing alone, provides probable cause for a warrantless search."); *State v. Jones*, 932 N.E.2d 904, 916 (Ohio Ct. App. 2010) (officer had probable cause to conduct a search "based exclusively upon the odor of raw marijuana coming from appellant's car"); *State v. Wright*, 977 P.2d 505, 508 (Utah Ct. App. 1999) (odor of raw marijuana provided probable cause); *State v. Cole*, 906 P.2d 925, 941 (Wash. 1995) (smell of growing marijuana resulted in probable

cause), *abrogated on other grounds by In re Det. of Peterson*, 42 P.2d 952, 958–59 (Wash. 2002); *McKenney v. State*, 165 P.3d 96, 98–99 (Wyo. 2007) (smell of raw marijuana amounted to probable cause); *see also* 2 LaFave § 3.6(b), at 310–11 ("It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of the *Johnson* case.").

Watts alternatively argues the warrant application did not demonstrate that the affiant, Detective Lansing, was qualified to recognize the odor of raw marijuana. We disagree. According to the application, Detective Lansing had been a Davenport police officer for seven-and-a-half years, had been involved in the investigation of controlled substance offenses for the past two years, and had attended schools pertaining to the investigation of controlled substance offenses. We find these qualifications allow the inference that Detective Lansing could identify the odor in question. While it might have been preferable if the warrant application had specifically explained how and why the officer was qualified to detect the odor of raw marijuana, *see Moriarty*, 566 N.W.2d at 869 (finding an officer with five years of experience and prior instruction on the odor of marijuana had sufficient knowledge to recognize the scent of marijuana); *see also Marcum v. State*, 843 N.E.2d 546, 548 (Ind. Ct. App. 2006) (finding an officer was adequately qualified to detect the odor of raw marijuana based on his training at the law enforcement academy, drug interdiction schools, and experience on the job), the application was minimally sufficient under the circumstances. *See State v. Olson*, 872 P.2d 64, 67 (Wash. Ct. App. 1994) (ability to recognize the odor of both growing and burning marijuana could be inferred from statements that the officer had attended courses on controlled substance investigations and had participated in numerous

controlled substance investigations, including marijuana investigations); 2 LaFave § 3.6(b), at 313 ("The cases indicate that it is common for the officer . . . who is applying for a warrant to explain the basis of his expertise in identifying marijuana by smell, usually by referring to his formal police training or to his prior experience in marijuana enforcement or both. It appears, however, that such an explanation is not a sine qua non to a finding of probable cause based upon a claimed smelling of marijuana."). *But compare State v. Holley*, 899 N.E.2d 31, 34–35 (Ind. Ct. App. 2008) (upholding the trial court's ruling that there was no probable cause for a warrantless search where the officer had attended one seminar where he was shown raw marijuana but there was no evidence he had any formal training or experience in detecting the odor of raw marijuana), *with Bivens v. State*, 880 So. 2d 486, 490 (Ala. Crim. App. 2003) (memorandum opinion affirming convictions over dissent's objection that police officer only testified he had been an officer for five years and did not testify that "he could recognize the distinctive smell of marijuana from his experience and training as a police officer"), *and Ramsey v. State*, 703 S.E.2d 339, 342 n.8 (Ga. Ct. App. 2010) (officer's testimony that he had worked at the sheriff's department for over four years and had previously encountered individuals in possession of narcotics was enough to justify trial court's conclusion that officer was able to smell burning marijuana).

Lastly, there remains the question whether the officers would have sought the search warrant even without the information provided by their original, warrantless entry. *See McGrane*, 733 N.W.2d at 682 (stating "we must also determine whether the deputies' 'decision to seek the warrant was prompted by what they had seen during the initial entry'" (quoting *Murray*, 487 U.S. at 542, 108 S. Ct. at 2536, 101 L. Ed.

2d at 483)). The record indicates that they would have. As Officer Proehl testified, once Watts opened the door and the officers noticed the overwhelming odor of marijuana, "I believed I had probable cause for a search warrant. I was hoping to gain consent or to secure the residence to apply for a search warrant." Proehl added that when he did not receive clear and unequivocal consent, he opted to seek a search warrant.

## IV. Conclusion.

The district court properly denied Watts' motion to suppress evidence. Although the initial entry into Watts' apartment was not justified by exigent circumstances, the subsequent search warrant was supported by probable cause (and would have been sought) even without the information from the improper sweep. We affirm Watts' convictions and sentence.

**AFFIRMED.**