# IN THE COURT OF APPEALS OF IOWA

No. 15-0094
Filed February 24, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**RICHARD COOPER WEMER JR.,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Wapello County, Kirk A. Daily, District Associate Judge.

　　　　Richard Cooper Wemer Jr. appeals his conviction for possession of marijuana with intent to deliver and failure to affix a drug tax stamp. **AFFIRMED.**

　　　　Christopher R. Kemp of Kemp & Sease, Des Moines, for appellant.

　　　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.

　　　　Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

The district court found Richard Wemer Jr. guilty of possession of marijuana with intent to deliver and failure to affix a drug tax stamp. On appeal, Wemer contends (1) the court should have suppressed evidence obtained during a search of his home, and (2) the district court erred in admitting a recording of the events.

## I. Background Facts and Proceedings

Ottumwa Police Officer Noah J. Aljets was dispatched to a home based on a 911 hang-up call. As he approached the home, he smelled marijuana. Aljets eventually spoke to Wemer, one of the residents of the home. Wemer admitted to smoking marijuana but denied making a 911 call. The officer confirmed the number and advised Wemer he would need to enter the home to "check it out." According to Aljets, Wemer invited him in.

Officers followed Wemer into the living room area, where they saw "two baggies of marijuana" and "paraphernalia on a coffee table." They "walk[ed] through the residence" to make sure no one else was "hiding," "destroying evidence," or "adding evidence" not belonging to Wemer. After the walk-through, the officers elected to apply for a search warrant. They obtained the warrant, searched the home, and seized marijuana and drug-related items.

The State charged Wemer with possession of marijuana with intent to deliver and failure to affix a drug tax stamp. See Iowa Code §§ 124.401(1)(d), 453B.1, .3, .12 (2011). Wemer moved to suppress the evidence obtained from the home. Following a hearing, the district denied the motion on the basis of the "emergency aid" exception to the warrant requirement as to the initial encounter,

Wemer's consent to entry into the home, the officers' observation of marijuana in plain view, and the existence of probable cause to support the application for a search warrant.

Before trial, Wemer sought to review the recordings captured by a system in Aljets' vehicle. The district court granted the request. The case was tried to the court. Wemer's attorney made no objection to the recordings other than an objection based on the grounds in the suppression motion.

After trial, Wemer obtained new counsel, who moved to review the recordings, reopen the record, and dismiss the trial information. The district court allowed a defense expert to review the recordings and present testimony on the destruction of "metadata" within the original recordings. The court denied the motion to dismiss and ultimately found Wemer guilty as charged. Wemer challenged the court's findings and conclusions, without success. The court imposed sentence and Wemer appealed.

## II.    Suppression Ruling

The Fourth Amendment to the United States Constitution as well as article I, section 8 of the Iowa Constitution protect citizens against "unreasonable searches and seizures" by government officials.[1]  *State v. Carlson*, 548 N.W.2d 138, 140 (Iowa 1996). Subject to certain exceptions, warrantless searches are

---

[1] Wemer contends the United States Supreme Court has narrowed the protections under the Fourth Amendment, but the Iowa Supreme Court may provide heightened protections under the Iowa Constitution. That is true. *See State v. Gaskins*, 866 N.W.2d 1, 6-7 (Iowa 2015) (reserving the right to apply principles differently under the state constitution compared to its federal counterpart). Because we are not the Iowa Supreme Court and the closest Iowa Supreme Court opinion on this subject was resolved under the Fourth Amendment rather than the Iowa counterpart, we do not separately address Wemer's argument under the Iowa Constitution. *See State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011).

per se unreasonable. *Id.* The recognized exceptions "are searches based on consent, plain view, probable cause coupled with exigent circumstances, searches incident to arrest, and those based on the emergency aid exception." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "Evidence obtained by an illegal search is inadmissible unless the state proves by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Carlson*, 548 N.W.2d at 140.

Wemer argues (1) Officer Aljets entered his home illegally, (2) "the entry into [his] home was not justified under the emergency aid" exception to the warrant requirement, (3) he "did not provide valid consent to enter his home," and (4) all evidence obtained during the search of the home, whether by warrant or otherwise, "was gained through the fruit of the poisonous tree" and should have been suppressed. Our analysis begins with the emergency aid exception to the warrant requirement and ends with the officers' search of the home pursuant to a warrant.

## A.     *Emergency Aid Exception*

A police officer has a right to enter a dwelling without a warrant to render emergency aid and assistance. *Id.* at 140-41. To determine whether this exception applies, we ask, "Under the circumstances, would a reasonable person have thought an emergency existed[.]" *State v. Crawford*, 659 N.W.2d 537, 542 (Iowa 2003). The standard requires less than probable cause. *Id.* at 543.

Our de novo review of the record reveals the following additional facts relating to the initial encounter. After the dispatcher received the 911 "hang up" call, the dispatcher attempted to return the call. The line was busy. According to

Aljets, the usual protocol when this happened was to "dispatch an officer to check it out to make sure that everything is okay."

Aljets was dispatched to the home. The front entrance had an outside and an inside door. Aljets knocked on the outside, screen door and got no answer. He opened the screen door and knocked on the inside door, "which at that point . . . wasn't secured all the way." As he knocked and announced his presence, the door creaked open. Aljets "smell[ed] a very strong odor of marijuana coming from the residence." Indeed, he testified "right when [he] walked up there, at the outside door, you could smell the smell of marijuana from the outer door."

Aljets imagined a drug transaction gone wrong—"something bad" occurring in the house. Still between the outside and inside doors, Aljets loudly announced his presence. Wemer came down the stairs. Aljets asked about the marijuana smell. Wemer admitted he and a friend had been smoking marijuana. Aljets told Wemer he was there because of the 911 call from the home. Wemer responded that no one in the home had called 911. After confirming the number, Aljets called for backup units.

We conclude the aborted 911 call coupled with the strong smell of marijuana outside the home would have led a reasonable person to believe an emergency existed. We reach this conclusion notwithstanding evidence of land line trouble in the area. A reasonable person could have concluded a failure to investigate the situation based on a presumption of a malfunctioning phone would have been inconsistent with protocol and with the officer's community caretaking responsibilities. *See State v. Kern*, 831 N.W.2d 149, 172-73 (Iowa

2013) (noting emergency aid doctrine is subset of community caretaking exception, which "involves the duty of police officers to help citizens an officer reasonably believes may be in need of assistance").

We acknowledge testimony indicating Aljets broke the plane of the inside door and may have actually stepped into the front entryway. In our view, the emergency aid exception to the warrant requirement covered this entry, if it occurred. *See State v. Breuer*, 577 N.W.2d 41, 50 (Iowa 1998) (concluding deputy's actions in opening the unlocked outer door of Breuer's apartment building and proceeding up the stairway to knock on Breuer's apartment door did not unreasonably invade Breuer's legitimate expectation of privacy with respect to the stairway); *State v. Vincik*, 436 N.W.2d 350, 353 (Iowa 1989) (noting "Vincik's '911' call, in which he requested help and indicated he had been shot, clearly justified the warrantless entries" through the unlocked front door and into one of the bedrooms); *see also United States v. Wilson*, No. 08-CR-2020-LRR, 2009 WL 905709, at *7-8 (N.D. Iowa Mar. 30, 2009) (concluding lockable door and doorbell button clearly marked threshold to home and warrantless entry into mudroom behind door was unconstitutional but stating, "[n]othing in this opinion should be read to suggest [the officer] was not justified in walking to Defendant's house, alighting the landing and knocking on the storm door").

We turn to Officer Aljets' subsequent decisions to proceed into the living room area along with other officers and to conduct a warrantless protective sweep of the home. The State argues Wemer consented to these actions. We need not resolve this issue because, even if Wemer did not voluntarily consent, the search warrant cured the taint.

## B.    Search Warrant

In *State v. Watts*, 801 N.W.2d 845, 852-56 (Iowa 2011), the Iowa Supreme Court addressed the question of whether a search pursuant to a warrant was tainted by evidence observed during a prior unlawful entry. The court stated:

> The exclusionary rule requires the suppression of evidence discovered as a result of illegal government activity. To determine whether an improper entry invalidates a subsequent search pursuant to a warrant, we need to consider whether the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant. In making the latter determination, we excise the illegally obtained information from the warrant application and determine whether the remaining legally obtained information supports probable cause.

*Watts*, 801 N.W.2d at 853 (citations omitted).

The court proceeded to determine whether the odor of marijuana could furnish probable cause for the warrant. *Id*. at 854. Citing precedent holding probable cause could be based on the odor of marijuana, the court stated:

> [U]pon opening the hallway door at the mid-point of the common hallway, the officers immediately noticed "a strong odor" of marijuana. By sniffing at the door jamb of apartment 12, they could tell the marijuana odor came from that apartment. When Watts opened the apartment door after the officers knocked, the aroma became "overpowering." . . . [T]hese facts set forth in the warrant application by themselves provided probable cause for issuance of the warrant.

*Id.*  *See also State v. McGrane*, 733 N.W.2d 671, 681-82 (Iowa 2007) (finding information in addition to illegally obtained information was sufficient to support a finding of probable cause for the issuance of a search warrant but concluding officers sought a warrant based on what they observed following the illegal

entry); *State v. Naujoks*, 637 N.W.2d 101, 113 (Iowa 2002) (concluding evidence obtained prior to illegal entry was enough to constitute probable cause to issue the search warrant but reversing and remanding for new trial based on absence of exigent circumstances to support initial entry).

We reach the same conclusion here. Aljets came to the home based on the 911 hang-up. He smelled marijuana from outside the home. Wemer confirmed his phone number and conceded he had been smoking marijuana. These facts provided probable cause to support the warrant.

*Watts* next considered "whether the officers would have sought the search warrant even without the information provided by their original, warrantless entry." 801 N.W.2d at 856. The court concluded the officers would have sought the warrant, based on one of the officers' testimony that "once Watts opened the door and the officers noticed the overwhelming odor of marijuana," the officer "believed [he] had probable cause for a search warrant." *Id.*

As in *Watts*, we believe officers in this case would have applied for a search warrant based on the information gained before they entered the living room and conducted the protective sweep. Although the search warrant application contained facts gained from observations of the living room, the application also included facts arising from Officer Aljets' initial approach to the home. As noted, those facts alone furnished probable cause for the search warrant. *Id.*; *State v. Rumley*, No. 14-0457, 2015 WL 576031, at *1 (Iowa Ct. App. Feb. 11, 2015) (concluding probable cause existed for the issuance of a search warrant where "[t]he officer smelled marijuana in the threshold of the room and could smell marijuana in the room when conversing with [a woman]");

*State v. Thielman*, No. 13-1218, 2014 WL 3511851, at *4 (Iowa Ct. App. July 16, 2014) ("After walking up to the apartment and smelling a strong odor of burning marijuana, the officers could have obtained a search warrant on that basis alone.").

Because the warrant rendered the search valid, we conclude the district court appropriately denied Wemer's motion to suppress.

## C.     Admission of Recording

Wemer contends the State incorrectly duplicated the original recording from Aljets' vehicle and, in the process, destroyed embedded information within the digital file, known as "metadata." In his view, the "destruction" of this data (1) amounted to a due process violation and (2) prevented proper authentication of the recording, rendering the recording inadmissible under our rules of evidence.

The constitutional issue was not raised by Wemer and was not decided by the district court. Accordingly, the issue was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

We turn to Wemer's challenge to the admissibility of the recording under our rules of evidence. The State sought to admit the recording during his bench trial. Wemer's attorney responded by stating he had "no objection to the introduction of the whole thing with the exception of [the] illegal search and consent issues." The court admitted the recording "subject to those objections." No evidentiary objection was raised.

After trial, Wemer filed a "motion to dismiss" on the grounds that he "raised a genuine question to the authenticity of this copy as an accurate record" and "the power to review the original and delete any metadata that reveals changes between the original and the copy lies entirely in the power of the State." The district court resolved the motion under the dismissal rule rather than an evidentiary rule. Based on the record up to this point, we question whether error was preserved.

However, Wemer's written "closing argument" stated the recording "cannot be authenticated as an original recording." And, in its findings and conclusions, the district court accepted Wemer's assertion that metadata was lost in the process of moving the files to a server but characterized this loss as "[a]n unintended byproduct" of the transfer process. The court concluded there was "no competent evidence of any sort" that the video/audio was altered, and went on to hold the video "trustworthy." Although the court did not cite the evidentiary rules on which Wemer now relies, we believe the analysis was sufficient to preserve error. We proceed to the merits.

Iowa Rule of Evidence 5.1003 permits the admission of a duplicate recording unless "(1) a genuine question is raised as to the authenticity of the original or (2) under the circumstances, admission of the duplicate would be unfair." Rule 5.1004 permits the admission of "the contents of a writing, recording, or photograph" where the original document is lost or destroyed, "unless the proponent lost or destroyed them in bad faith" or "[n]o original can be obtained by any available judicial process or procedure."

Wemer presented scant if any evidence challenging the authenticity of the original recording. But, even if he had, Aljets's testimony on how, when, and where the recording was made established this requirement. Rule 5.1003, then, is inapposite. Rule 5.1004 is more applicable.

As noted, Wemer focuses on the loss of metadata in the original recording after the recording was transferred to a server. Assuming without deciding that the loss of metadata amounts to a loss of the original recording, Wemer furnished no evidence the department acted in bad faith. *See Kaiser Agric. Chems. v. Ottumwa Prod. Credit Ass'n*, 428 N.W.2d 681, 683 (Iowa Ct. App. 1988) (noting party failed to establish that documents transferred and lost following sale of subsidiary were intentionally lost under circumstances indicating intentional fraud). Absent this showing, the duplicate was admissible.

We affirm Wemer's judgment and sentence for possession of marijuana with intent to deliver and failure to affix a drug tax stamp.

**AFFIRMED.**