# IN THE COURT OF APPEALS OF IOWA

No. 21-0962
Filed August 3, 2022

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**MICHAEL WILLIAM EUCHNER SR.,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Ida County, Julie Schumacher (suppression) and Zachary Hindman (trial), Judges.

       A defendant appeals his drug convictions, challenging the district court's denial of his motion to suppress and the sufficiency of the evidence at trial. **AFFIRMED.**

       Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich (until withdrawal) and Shellie L. Knipfer, Assistant Appellate Defenders, for appellant.

       Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

       Considered by Vaitheswaran, P.J., Badding, J., and Gamble, S.J.* Schumacher, J., takes no part.

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BADDING, Judge.**

While investigating an illegally parked car in an alley, two deputies smelled marijuana coming from a nearby property owned by Michael Euchner Sr. A search warrant was issued the next day but not executed until five days after that, at which time law enforcement found drugs, related paraphernalia, baggies, cash, and scales. Euchner unsuccessfully moved to suppress this evidence and was convicted of possessing both methamphetamine and marijuana with the intent to deliver and failure to affix a drug-tax stamp. Euchner appeals, claiming the district court erred in denying his motion to suppress because "plain smell" does not establish probable cause and the information used to obtain the warrant was stale by the time it was executed. He also challenges the sufficiency of the evidence to show he intended to deliver methamphetamine or marijuana.

I.      **Background Facts and Proceedings**

At roughly 10:30 p.m. on October 27, 2018, Deputies Alex Ehlers and Kirk Kinnaman of the Ida County Sheriff's Office were checking on a vehicle that was illegally parked in an alley behind Euchner's residence. A separate building known as "PC repair" is also located on the property.[1] According to the search warrant application, after Deputy Ehlers got out of his vehicle, he "could smell the odor of marijuana coming from around the area of the PC repair building. [He] then walked to the back door of the house and could also smell the odor of marijuana coming from the back door entrance of the house as well." Ehlers summoned Deputy Kinnaman to the area and asked if he could smell the odor. Kinnaman responded

---

[1] Later trial testimony disclosed this was a computer repair business owned by Euchner.

that he could smell marijuana "coming from around the PC repair building and from the back door area as well." After knocking on the door to the residence and receiving no response, Deputy Ehlers applied for a search warrant based on the marijuana smell wafting from the property. The application detailed the deputies' training and experience with drug cases, noting that both were K9 handlers and familiar with the smell of marijuana. A magistrate granted the search warrant application the next day, October 28.

The warrant was executed five days later, on November 2. As a result of the evidence obtained from the search, Euchner was charged with various drug crimes. Euchner filed a motion to suppress, arguing that law enforcement lacked probable cause to believe that evidence listed on the application, "with the possible exception of marijuana," was located on the property and any information supporting probable cause was stale by the time the warrant was executed. The district court rejected both arguments in its ruling denying Euchner's motion.

The case proceeded to a jury trial in May 2021. Deputies Ehlers and Kinnaman testified that their investigation of Euchner started when they smelled burnt marijuana at his property on October 27. Before the warrant was executed, law enforcement broke up into two teams—one to secure the residence and one to secure the business. Deputy Ehlers testified that, upon arrival at the property, he could smell marijuana outside the computer repair building. Ehlers proceeded to the residence with team one. Inside the home, they found Euchner, his wife, and another couple at the kitchen table playing cards. Euchner's son, a female, and a minor child were found upstairs. No one was present in the business upon team two's breach of that building.

After Euchner was read his *Miranda* rights, Deputy Ehlers asked him to "take us to the narcotics." Euchner led them to the computer repair building. Once there, he pointed the officers to a desk drawer that contained two methamphetamine pipes and a small bag of marijuana. At this point, Euchner advised, "I'm just a consumer guys, I'm not like . . . a big bad guy." In a separate drawer, Deputy Ehlers found "multiple bundles of baggies," which he testified "are used to package narcotics," and a baggie with methamphetamine in it. Euchner said he used the baggies to store computer parts, but no baggies with parts were found.

All in all, law enforcement found 21.89 grams of methamphetamine and 25.00 grams of marijuana in the computer repair building. The methamphetamine was found among three bags in Euchner's desk, containing respective amounts of 1.15 grams, 6.91 grams, and 13.83 grams. Deputy Ehlers testified: "Usually to the user, a gram of methamphetamine is a lot. They're usually sold in gram increments or less." Deputy Kinnaman agreed, testifying that a typical user would possess "[u]p to a gram."

The marijuana was found in a mason jar in the bottom drawer of Euchner's desk. Two digital scales were also found in the desk, one of which had a green, leafy substance on it. And officers found $1394.00 in cash at the business, mostly consisting of $1.00 bills, $320.00 in quarters, $85.60 in dimes, and $65.30 in nickels. At the residence, officers uncovered a marijuana roach in the nightstand of an upstairs bedroom. The roach was inside one of the pill pouch baggies like those found in the business building.

After Euchner was arrested and the search ended, he was interviewed by Deputy Ehlers. During the interview, Euchner told the deputy he would do controlled buys for the police, touting his ability to get "pounds of methamphetamine." This led Deputy Ehlers to believe that Euchner had been in the "game for a while. He has higher connections. Your general user does not have that connection."

The jury ultimately found Euchner guilty of possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, and failure to affix a drug-tax stamp. Following the guilty verdicts, Euchner moved for a new trial and renewed a motion for judgment of acquittal he made at trial, both of which were denied at the time of sentencing.

## II. Standards of Review

Appellate review of a challenge to a search warrant for an alleged lack of probable cause is de novo, based on the totality of the circumstances. *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Challenges to the sufficiency of the evidence supporting a conviction are reviewed for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 517 (Iowa 2022).

## III. Analysis

### A. Search Warrant

In challenging the district court's denial of his motion to suppress, Euchner argues the search warrant was not supported by probable cause because the "plain smell" doctrine is unreliable and the "information in this case was stale" given the time between the issuance of the warrant and its execution. Though Euchner intertwines his arguments about plain smell and staleness, we view them as

separate issues—the former on the initial existence of probable cause and the latter on the dissipation of probable cause due to passage of time. We accordingly address them separately, starting with the plain-smell doctrine.

### 1.    Does the search warrant pass the smell test?

When examining challenges to probable cause to support a warrant, we "do not make an independent determination of probable cause." *McNeal*, 867 N.W.2d at 100. Instead, we merely determine "whether the issuing judge had a substantial basis for concluding probable cause existed." *Id.* (quoting *State v. Gogg,* 561 N.W.2d 360, 363 (Iowa 1997)). "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding"—"[c]lose cases are decided in favor of upholding the validity of the warrant." *Id.* (first alteration in original) (quoting *Gogg*, 561 N.W.2d at 364).

This is not a close case. Euchner simply argues the plain-smell doctrine "should be rejected on the basis of unreliability," pointing to what he says are undetectable differences between the odor of legal and illegal items containing THC, as well as "the mobility of odors." But we cannot reject a doctrine that has been adopted by our supreme court, *see State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990), as this one was in *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011).

In *Watts*, our supreme court considered whether an officer's detection of an "overpowering odor of raw marijuana coming from inside the apartment" coupled with his experience in investigating controlled substances offenses was "enough to sustain the warrant by themselves." 801 N.W.2d at 853. The court found it was, noting that the United States Supreme Court has held:

> If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

*Id.* at 854 (quoting *Johnson v. United States*, 333 U.S. 10, 13 (1948)). The *Watts* court stated it had "followed this reasoning" in past cases "and held that a trained officer's detection of a sufficiently distinctive odor, *by itself* or when accompanied by other facts, may establish probable cause." *Id.* (emphasis added) (collecting cases).

Euchner tries to distinguish *Watts*, arguing it "is inapplicable to the instant matter, as in that case the police were in a common hallway when they detected the odor of marijuana, and were able to isolate the apartment from which the odor was emanating." The deputies here were able to do the same thing, even though they were outside. Both smelled marijuana "coming from around the area of the PC repair building" and "from the back door entrance of the house as well." And both were "qualified to know the odor," *Johnson*, 333 U.S. at 13, given their training and experience with marijuana cases as described in the search warrant application. We have found similar facts sufficient to establish probable cause for the issuance of a search warrant of a home. *See State v. Wemer*, No. 15-0094, 2016 WL 740443, at *1, *3–4 (Iowa Ct. App. Feb. 24, 2016) (finding facts arising from officer's "initial approach to the home"—the smell of marijuana—"alone furnished probable cause for the search warrant"). A majority of other courts have as well. *See Watts*, 801 N.W.2d at 854–55 (collecting cases); *see also State v. Kazmierczak*, 771 S.E.2d 473, 478 (Ga. Ct. App. 2015) (collecting cases).

In light of these cases, which applied the plain-smell doctrine to searches of homes, Euchner's argument about Iowa's recognition of the "special sanctity" of homes versus automobiles is not up to snuff. He contends a "more stringent standard under the Iowa constitution is warranted as Euchner's home and business were searched (as opposed to an automobile)." But he has not articulated what that "more stringent standard" would be. *See State v. Simmons*, 714 N.W.2d 264, 272 (Iowa 2006) (declining to depart from Fourth Amendment jurisprudence where defendant "has not asserted and we have not found a basis to distinguish the protection afforded by the Iowa Constitution from those afforded by the federal constitution"). In any event, there is no state or federal constitutional violation when a search warrant is issued based on probable cause. *See, e.g.*, *Gogg*, 561 N.W.2d 360, 363 (Iowa 1997). We find that is the case here considering the totality of the circumstances detailed above, along with all reasonable inferences to support the magistrate's probable-cause finding.

### 2. Was the search warrant stale?

Euchner nevertheless argues that the actual search was not supported by probable cause at the time it was conducted because "the information was too remote in time to be reliable."[2]

---

[2] We note that most of the caselaw considers staleness as it relates to the time between when evidence was observed and issuance of a search warrant. *See, e.g., Gogg*, 561 N.W.2d at 362–63, 368; *State v. Randle*, 555 N.W.2d 666, 670 (Iowa 1996); *State v. Gillespie*, 503 N.W.2d 612, 614 (Iowa 1993); *State v. Woodcock*, 407 N.W.2d 603, 605 (Iowa 1987); *State v. Kaufman*, 265 N.W.2d 610, 616 (Iowa 1978); *State v. Cassady*, 243 N.W.2d 581, 582 (Iowa 1976); *State v. Bean*, 239 N.W.2d 556, 559 (Iowa 1976); *State v. Strough*, No. 10-1544, 2011 WL 4578406, at *3 (Iowa Ct. App. Oct. 5, 2011).

However, the timing of when a warrant is executed is in play in some other cases, which apply analyses like that used in the above cases. *See State v.*

"Because probable cause requires a reasonable belief that evidence of a crime will be found on the premises to be searched, it is important the information upon which this belief is based be current and not remote in time." *Id.* at 367. But "[t]he passage of time alone is not determinative." *Id.* "Whether information is stale depends on the circumstances of each case." *Randle*, 555 N.W.2d at 670. Those circumstances include:

> (1) [T]he character of the crime (whether an isolated event or an ongoing activity), (2) the character of the criminal (nomadic or stable), (3) the nature of the thing to be seized (perishable, easily destroyed, not affixed and easily removable, or of enduring utility to the holder), and (4) the place to be searched (mere criminal forum of convenience or secure operational base).

*Gogg*, 561 N.W.2d at 367 (internal citations omitted).

On the first factor, Euchner points out that his "situation was an isolated event" and there were "no allegations of ongoing criminal activity." He is correct that this was an isolated event. And, on the third factor, he is also correct that "[d]rugs are readily consumable or transferable."[3] *Grogg*, 561 N.W.2d at 367. "[W]here an isolated observance of a drug offense is involved, 'probable cause diminishes quickly,' due in large part to the fact that drugs are 'readily consumable or transferable.'" *Strough*, 2011 WL 4578406, at *3 (quoting *Gogg*, 561 N.W.2d at

---

*Paterno*, 309 N.W.2d 420, 423 (Iowa 1981); *State v. Crawford*, No. 01-1868, 2003 WL 118364, at *2 (Iowa Ct. App. Jan. 15, 2003).

[3] The second factor—Euchner's stability in the community—makes it more reasonable to assume that evidence would remain on his property unlike a defendant who was nomadic. *See Shoemaker v. State*, 451 A.2d 127, 136 (Md. Ct. Spec. App. 1982). And, as Euchner acknowledges, the fourth factor considering the place to be searched does not weigh in favor of or against his staleness claim.

367).  That said, "[w]hether the criminal activity is continuous or isolated does not matter if the passage of time . . . is not significant."  *Gogg*, 561 N.W.2d at 367.

In *Gogg*, the supreme court rejected a staleness claim only because the passage of time between an informant's observations and issuance of the search warrant—six days—was not a significant amount of time.  *Id.* at 368.  Similarly, in *Paterno*, the supreme court rejected a staleness claim when an informant's observations occurred on June 19, a warrant application was submitted on June 21, and the warrant was executed on June 26.  309 N.W.2d at 421–24.  The court acknowledged the "case dealt with the presence of controlled substances on a single instance" and "in such cases probable cause ordinarily does not continue for an extended period of time."  *Id.* at 424.  Yet the court found probable cause continued to exist "at the time of the issuance and execution of the warrant," noting "probable cause does not require absolute proof that the contraband was in the place in question at the very moment the warrant was issued and executed."  *Id.*; *accord Crawford*, 2003 WL 118364, at *2 (finding a reasonable person could believe that if stolen property and clothes used in a robbery were at the property when the warrant was issued, it would not have been removed by the time of the search eight days later).

Based on these cases, we conclude that although this was an isolated event and the evidence sought was easily removable, the passage of six days was not significant enough to render the warrant stale.

## B.    Sufficiency of the Evidence

Making the argument that he was a drug *user* and not a drug *dealer*, Euchner claims the evidence was insufficient to show he intended to deliver the

methamphetamine and marijuana. He points to his explanation that the baggies were intended to be used for storing computer parts; the possibility "that users b[u]y larger quantities for their own consumption"; the nature of the currency found; the evidence of personal use, like the methamphetamine pipes and marijuana roach; the possibility that the scales were used for weighing gunpowder; and the lack of a ledger, prior controlled buys, and cutting agents.

While there may have been alternate explanations for the items found at Euchner's property, that is not the question before us. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (noting it is not the job of the court in reviewing a motion for judgment of acquittal "to resolve conflicts in the evidence," "determine the plausibility of explanations, or to weigh the evidence" (citation omitted)). Instead, in reviewing a challenge to the sufficiency of the evidence, we view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). "We will uphold the verdict if substantial evidence in the record supports it." *Id.* Evidence is not insubstantial just because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).

As Euchner recognizes, possession of drugs with intent to deliver "may be inferred from the manner of packaging the drugs, from large amounts of unexplained cash, as well as from the quantity of drugs." *State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) (internal citations omitted). All of these circumstances were present here.

In Euchner's desk, law enforcement found 21.89 grams of methamphetamine, spread between three bags containing 1.15 grams, 6.91 grams, 13.83 grams, and 25.00 grams of marijuana in a mason jar. Both Deputy Ehlers and Kinnaman testified those amounts were well beyond what a normal user would possess. The different weights of the methamphetamine also mattered to Deputy Ehlers, who testified it showed "that it's starting to get separated" for resale. He explained dealers typically take larger amounts of methamphetamine—like the bag with 13.83 grams—and then use a scale to "break those amounts down to smaller amounts" they put into baggies to sell.

Deputy Ehlers testified that he also "found multiple bundles of baggies that . . . are used to package narcotics" in Euchner's desk and no baggies with computer parts in them—just a baggie with a marijuana roach and another with methamphetamine. He found two digital scales near the drugs in the business building, one of which had a leafy green residue on it, and $1394.00 in cash. Though the deputies recognized most dealers would have cash in denominations larger than one-dollar bills, Ehlers testified, "Currency is currency." He also said the smaller amounts of money suggested that Euchner had just purchased the stock, so all the money was in the drugs. Finally, when Euchner said he would conduct controlled buys for the police, he told Ehlers that he could get "pounds of methamphetamine." This led the deputy to believe Euchner had connections in the drug trade and was more than just a user.

In sum, though Euchner tried to explain away these indicators of drug dealing, "the jury was not required to accept the defendant's version of the events." *Jones*, 967 N.W.2d at 343 (cleaned up). Viewing the evidence in the light most

favorable to the State, we conclude there is sufficient evidence that Euchner possessed the methamphetamine and marijuana with the intent to deliver.

**IV.     Conclusion**

We affirm the denial of Euchner's motion to suppress and find sufficient evidence supported the challenged verdicts.

**AFFIRMED.**