# IN THE COURT OF APPEALS OF IOWA

No. 18-0481
Filed May 15, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIMOTHY DOUGLAS SEILS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

        The defendant challenges the denial of his motion to suppress following his conviction for operating while intoxicated, third offense. **REVERSED AND REMANDED.**

        Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, PLC, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Heard by Potterfield, P.J., and Mullins and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Timothy Seils challenges the district court's denial of his motion to suppress following his conviction for operating while intoxicated, third offense. Seils maintains police officers (1) violated his constitutional rights when they searched his vehicle and (2) improperly invoked implied consent pursuant to Iowa Code section 321J.6 (2017) without satisfying the statutory conditions precedent. He asks that we reverse the district court's denial of the motion to suppress and remand for new trial.

**I. Background Facts and Proceedings.**

On the night of January 26, 2017, Erin Goering called 911 and reported a white Chevrolet Silverado truck that was "swerving all over the road [at] a very high speed." Goering was a passenger in a vehicle that continued to follow the truck for approximately ten minutes. During that time, she stayed on the phone with dispatch, reporting the truck was passing other cars aggressively, failing to stay between the lines, and alternating between driving at high rates of speed and braking. Goering remained on the line until the Iowa State Trooper who was dispatched to find the truck drove past them. She ultimately reported to dispatch that she lost sight of the truck but that a number of vehicles were taking the next exit—the St. Charles exit—and the truck could be one of them.

Trooper Jonathan Salesberry was near the location reported by Goering. He located a vehicle that matched the description as the vehicle took the St. Charles exit. At the top of the exit ramp, Trooper Salesberry witnessed the vehicle take a right-hand turn too wide, veering into the lane of oncoming traffic before correcting. Almost immediately after, the truck signaled it was going to

turn into a driveway, and Salesberry activated the emergency lights on his squad car. The driver of the truck, who officers later determined was Seils, continued driving—making the turn into the driveway, driving "a couple hundred feet" down the driveway, and then pulling into the garage. Trooper Salesberry and Seils exited their respective vehicles, and Salesberry instructed Seils to come out of the garage and talk to him. According to Salesberry's later testimony, he immediately noticed that Seils's "gait or balance was a little bit off." He also noticed Seils had "bloodshot and watery eyes," "an odor of alcoholic beverage coming from him," and had to lean on Salesberry's squad car a few times while he was standing in the driveway.

At about the same time, Troopers Darren Flaherty and Deborah Stine each pulled into the driveway behind Salesberry's squad car. Because Trooper Salesberry was outside of his district, he asked Trooper Flaherty to take over the investigation for operating while intoxicated (OWI).

Trooper Flaherty asked Seils to complete some field sobriety tests, which Seils refused to do. Then, as Flaherty walked back toward his squad car to place his OWI booklet in it, Seils began walking toward the door of his home. Trooper Flaherty ordered him to stop, and Seils broke into a run, getting partway into his home before Flaherty pulled him back out and got him to the ground. With the assistance of Salesberry and Stine, Flaherty placed Seils in handcuffs. Seils asked, "Are you seriously arresting me," and Flaherty responded, "Yes, I am." Seils was told, "Now you're going for interference" and was placed in Flaherty's squad car.

While Seils was handcuffed and seated in the squad car, Troopers Salesberry and Stine entered Seils's garage and went into his truck, finding and removing a six-pack of beer from the passenger compartment. At least one of the beer bottles was open and partially empty.

Trooper Flaherty then transported Seils to a local jail, where he invoked Seils's implied consent to a breath test. Seils refused to test.

Seils was charged with operating while under the influence, third offense.

Due to his refusal to submit to testing, pursuant to section 321J.9,[1] Seils's driver's license was revoked. At the administrative hearing in which Seils challenged the revocation, Trooper Flaherty repeatedly testified that Seils was not under arrest for OWI at the time Flaherty invoked Seils's implied consent to chemical testing. Based on this testimony, the administrative law judge reversed the revocation of Seils's driver's license, determining revocation was not appropriate because none of the specified conditions listed in section 321J.6[2] existed at the time Trooper Flaherty invoked implied consent.

---

[1] Iowa Code section 321J.9(1) provides:
> If a person refuses to submit to the chemical testing, a test shall not be given, but the department, upon the receipt of the peace officer's certification, subject to penalty for perjury, that the officer had reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321J.2 or 321J.2A, that specified conditions existed for chemical testing pursuant to section 321J.6, and that the person refused to submit to the chemical testing, shall revoke the person's driver's license and any nonresident operating privilege for [a period of time].

[2] Iowa Code section 321J.6(1) allows a police officer to invoke a driver's implied consent to chemical testing when the driver "operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle" in violation of the OWI laws and any of the following conditions exist:
> a. A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

Seils filed a motion to suppress evidence in his criminal case, arguing the troopers violated his constitutional rights when they entered his garage and his car looking for evidence while he was handcuffed and detained in a squad car. He also argued evidence of his refusal to submit to chemical testing should be suppressed because Trooper Flaherty failed to meet any of the necessary conditions in section 321J.6 before invoking his implied consent.

At a hearing on the motion in district court, Trooper Flaherty changed his previous sworn testimony and testified that Seils was placed under arrest for OWI before the trooper invoked his implied consent to chemical testing. Flaherty conceded he never told Seils specifically that he was under arrest for OWI and that his testimony had changed from the administrative hearing. Trooper Flaherty explained the difference by stating that he had not reviewed any of the videos from the scene or jail before the administrative hearing but had done so before the suppression hearing, which he maintained had refreshed his memory. The district court denied Seils's motion to suppress, including in the order a

b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
c. The person has refused to take a preliminary breath screening test provided by this chapter.
d. The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.
e. The preliminary breath screening test was administered to a person operating a commercial motor vehicle as defined in section 321.1 and it indicated an alcohol concentration of 0.04 or more.
f. The preliminary breath screening test was administered and it indicated an alcohol concentration less than the level prohibited by section 321J.2, and the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.
g. The preliminary breath screening test was administered and it indicated an alcohol concentration of .02 or more but less than .08 and the person is under the age of twenty-one.

conclusory statement that Seils had been arrested for OWI and interference at the scene.

Following a multi-day trial, a jury convicted Seils of OWI, third offense. He appeals.

## II. Discussion.

### A. Implied Consent.

Pursuant to Iowa Code section 321J.6, police officers in Iowa have the "authority . . . to test the breath, blood or urine of any person suspected of driving while intoxicated." *State v. Overbay*, 810 N.W.2d 871, 875 (Iowa 2012); *see* Iowa Code § 321J.6(1) ("A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens.") Still, while "drivers are deemed to have impliedly consented to testing, they nonetheless generally have the statutory right to withdraw that consent and refuse to take any test." *Overbay*, 810 N.W.2d at 875.

Section 321J.6 outlines the conditions that allow an officer to invoke a driver's implied consent to testing. Seils maintains Trooper Flaherty did not follow the necessary procedure, as he was not placed under arrest for operating while intoxicated before the trooper invoked implied consent, *see* Iowa Code § 321J.6(1)(a), and it is undisputed none of the other conditions were met, *see id.* § 321J.6(1)(b)-(g). Based on this alleged failure, Seils asks that we suppress the evidence of his refusal to test. "We review the district court's decision to deny a

motion to suppress based on interpretation of a statute for correction of errors at law." *State v. Madison*, 785 N.W.2d 706, 707–08 (Iowa 2010).

Seils asks us to reverse the district court's finding he had been arrested for OWI; as, he argues, the court made the ruling based upon Trooper Flaherty's testimony at the hearing on the motion to suppress, which was contrary to his testimony at the administrative hearing. At the suppression hearing, the trooper admitted he told Seils he was under arrest for OWI only after Seils refused to take the breath test. *See* Iowa Code § 321J.6(1)(a). In fact, Trooper Flaherty told Seils that if he took the breath test and "passed," the trooper would only charge him with interference and would give Seils a ride home. We agree that under the facts of this case, the State failed to prove that Trooper Flaherty had lawfully placed Seils under arrest for a violation of section 321J.2 at the time he invoked implied consent. Thus, the foundation requirements for implied consent had not been met when Seils refused the test.

We recognize the supreme court's 1974 ruling in *State v. Jensen*, where it said, "Evidence of a refusal to submit to a test is inadmissible where the results would be inadmissible. Where the proper procedure is following, the test results are admissible in either a civil or criminal action." 216 N.W.2d 369, 372 (Iowa 1974). Any test results would be inadmissible against Seils, so his refusal to test is also inadmissible.

While Iowa Code section 321J.16 states evidence of a test refusal is "admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation section 321J.2 or 321J.2A," similar statutory language was in effect

when our supreme court decided *Jensen*.[3] Yet the court decided that a defendant's refusal to submit to testing was only admissible as evidence if the implied-consent requirements were properly fulfilled before the defendant refused. *Jensen*, 216 N.W.2d at 372 ("Where the proper procedure is followed, a refusal to submit to the test is likewise admissible").

While an arrest for OWI is essential in this context to the foundation requirements for admissibility of test results under section 321J.6, evidence of a test refusal also requires the same foundational requirements to be admissible. On the other hand, evidence of a test refusal is admissible where the implied consent procedures have been followed, but other objections to the invocation of implied consent are raised. *See* Iowa Code § 321J.16; *see also State v. Claiser*, No. 03-0424, 2004 WL 2296365, at *2 (Iowa Ct. App. Oct. 14, 2004) (finding the defendant's test refusal admissible where the defendant challenged the reliability of the testing machine).

It would be an "anomalous [rule] indeed which . . . permit[s] introduction of evidence of a refusal to take a test when the test itself cannot be shown." *State v. Hall*, 203 N.W.2d 375, 376 (Iowa 1973). The plain meaning of chapter 321J requires us to determine Seils's refusal to comply with chemical testing was not admissible evidence where Trooper Flaherty failed to meet the statutory conditions precedent before invoking implied consent. *See Carolan v. Hill*, 553

---

[3] Iowa Code section 321B.11 (1971) states:

> If the person under arrest refuses to submit to the test or tests, proof of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage.

N.W.2d 882, 887 (Iowa 1996) ("We are required to interpret the [statutory] language fairly and sensibly in accordance with the plain meaning of the words used by the legislature.").

**B. Search of Vehicle.**

Seils maintains the troopers' entry into his garage and subsequent search of his parked vehicle, while he was handcuffed and seated in a squad car, was unconstitutional, as he had an expectation of privacy in both his garage and in his vehicle, the troopers did not have a warrant, and no exception to the warrant requirement applies. Because his claim implicates a constitutional right, we review de novo. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011).

Although the district court ruled the evidence of the beer bottles found in the passenger compartment of Seils's vehicle was admissible because of the search-incident-to-arrest exception to the warrant requirement, the State concedes on appeal that neither this exception nor any other applies in this situation. *See State v. McGrane*, 733 N.W.2d 671, 676 (Iowa 2007) (recognizing "[t]he State has the burden of proving by a preponderance of the evidence that a warrantless search falls within one of the exceptions"). Still, the State maintains we need not remand for new trial without the evidence of the beer bottles, arguing the admission of the evidence constitutes harmless error. *See State v. Peterson*, 663 N.W.2d 417, 430 (Iowa 2003) (stating constitutional errors do not require reversal when the error is harmless). In deciding whether this is a harmless error, we consider "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* at 431 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

We cannot say the admission of the evidence of beer bottles—including at least one open, partially empty container—found in Seils's vehicle was harmless. In order to prove its case, the State had to establish that Seils has operated a motor vehicle and, at the time of operation, was under the influence of an alcoholic beverage. There was a multitude of evidence introduced at trial that Seils was under the influence of something: from the testimony of Goering about the erratic driving of the white Chevrolet truck to the testimony of multiple troopers regarding the physiological signs Seils exhibited. But there was little evidence other than the beer bottles showing that Seils behavior was the result of consuming alcohol as opposed to some other substance. The prosecutor made some connection through Trooper Flaherty's testimony that alcohol is a depressant and statements Seils made while sitting in the squad car and at least one trooper testified they could smell the odor of alcohol coming from Seils's person. But we cannot say the jury, in determining whether Seils was under the influence of alcohol, did not take into consideration that open beer bottles were found within Seils's reach in the vehicle. Similarly, we cannot say the jury did not consider the evidence of Seils's refusal to submit to a breath test against him. Thus, we must remand this case for new trial without the illegally obtained evidence.

**III. Conclusion.**

Because the State failed to prove the implied-consent procedures had been satisfied at the time the trooper invoked Seils's implied consent, the evidence of Seils's refusal to test is not admissible. And the evidence obtained through the illegal search of Seils vehicle should been suppressed. We reverse

the district court's denial of Seil's motion to suppress and remand for a new trial without the suppressed evidence.

**REVERSED AND REMANDED.**