# IN THE COURT OF APPEALS OF IOWA

No. 19-1104
Filed July 22, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBERT JOHN MORRIS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Carroll County, Gary L. McMinimee, Judge.

Robert Morris appeals the restitution order entered after his guilty plea.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Jesse A. Macro, Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Greer, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GREER, Judge.**

Robert Morris appeals the restitution order entered after he pled guilty to two counts of reckless use of a firearm causing serious injury, arguing the restitution award lacks substantial evidentiary support. We affirm in part and vacate in part the restitution order and remand for further proceedings.

**I. Background Facts and Proceedings.**

On April 12, 2018, Robert Morris shot Jacob Helkenn and Andrew Wempe. On December 14, Morris entered a written guilty plea to two counts of reckless use of a firearm causing serious injury, in violation of Iowa Code section 724.30 (2018). The district court accepted Morris's plea on February 1, 2019.

The court set a restitution hearing for May 20. Before the hearing, the State filed restitution claims for Helkenn and Wempe under Iowa Code section 910.3. Morris stipulated that Wempe incurred $2938.10 in medical expenses. At the hearing, with only his claims to consider, Helkenn testified to medical expenses, lost wages from snow removal and concrete work, property damage, and costs associated with having lost his apartment.

In a written order, the court granted Wempe's claim for medical expenses as well as Helkenn's claims for damage to clothing and carpeting. The court granted Helkenn's claim for lost wages in part, approving the claim related to concrete work but finding too speculative his claim for lost earnings associated with snow removal he provided at his apartment on his landlord's behalf.

The court summarized its findings on Helkenn's claims as follows:

> The Court finds the evidence establishes that victim Jacob Mark Helkenn incurred uninsured medical expenses in the sum of $16,450.40, damage to clothing in the sum of $209, and $50 for rug

cleaning. In addition to these expenses, Helkenn testified he lost wages in the sum of $19,040 ($17 per hour x 40 hours per week x 28 weeks), and as a result, he could [not] pay his rent and lost his apartment and an opportunity to earn money from snow removal. The Court finds Helkenn is entitled to the lost wages, but that any damage due to the loss of the apartment is duplicative of his lost wages and the loss of earnings for snow removal is too speculative to be compensated.

Morris appeals.[1]

## II. Standard of Review.

"We review the district court's restitution order for correction of errors at law." *State v. Roache*, 920 N.W.2d 93, 99 (Iowa 2018). "[W]e determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Albright*, 925 N.W.2d 144, 158 (Iowa 2019) (citation and internal quotation marks omitted). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001) (citation omitted). Although they do not bind us, we "give[] deference to the district court's factual findings due to its opportunity to assess the credibility of witnesses." *State v. McGrane*, 733 N.W.2d 671, 675–76 (Iowa 2007).

## III. Analysis.

On appeal, Morris challenges the amounts awarded for each item of restitution, arguing that Helkenn's testimony was insufficient to establish these

---

[1] After Morris filed his notice of appeal, the State submitted a pecuniary damages statement listing $8516.35 the Iowa Crime Victim Compensation Fund paid Helkenn for medical bills. The district court set a hearing to discuss whether to modify the restitution provisions because of this filing but it later continued the hearing pending resolution of Morris's appeal.

amounts. We must determine whether the restitution award is supported by substantial evidence.

Often crimes result in damage to a victim. "Once the causal connection [between the criminal act and the victim's damages] is established by a preponderance of the evidence, 'the statute allows recovery of "all damages" . . . which the state can show by a preponderance of the evidence.'" *Bonstetter*, 637 N.W.2d at 168 (citation omitted); *see also* Iowa Code § 910.1(3) (defining pecuniary damages recoverable as restitution). If there is uncertainty about "the amount of damages, recovery may be had if there is proof of reasonable basis from which the amount may be inferred" and the award "is not speculative, possible or imaginary." *Roache*, 920 N.W.2d at 106 (quoting *State v. Watts*, 587 N.W.2d 750, 752 (Iowa 1998)). We will affirm a restitution award if "it is within the reasonable range of the evidence." *Watts*, 587 N.W.2d at 752.

Using these standards, we conclude there is substantial evidence to support the awards for Helkenn's clothing, carpet cleaning, and lost wages. Helkenn testified that the bullet hole and the blood from the wound ruined the shirt, pants, socks, and shoes he was wearing at the time of the shooting. He testified about the brand of the clothing items he was wearing and valued each item's replacement cost, for a total of $209. He also testified that he paid $50 to clean his blood off the carpet. The court found Helkenn's testimony credible and accepted the amounts for the damaged clothing and carpet. We, likewise, find these amounts have a reasonable basis.

As for lost wages, Helkenn testified that after the shooting he was unable to work for about twenty-eight weeks. Before the shooting he was making $17 per

hour and working about fifty hours per week. Helkenn also noted that his boss, with whom he did the concrete work, worked "minimum 40 hours a week." The court accepted Helkenn's hourly wage and duration of unemployment but it used forty hours per week to determine that Helkenn's lost wages were $19,040. We conclude there is a reasonable basis for this award as well.

The medical expenses are a different matter. There is insufficient evidence in this record to support the award for Helkenn's medical expenses. Helkenn testified he was uninsured at the time of the shooting and claimed he had $16,450.40 in medical bills from St. Anthony's Regional Hospital in Carroll. The following exchange took place with on direct examination:

> Q: And you indicated the total bill w[as] $16,450.40?  A: I guess.
> Q: Are they continuing to bill you for that amount?  A: Yes.

On cross-examination, the following exchange took place:

> Q: The $16,450 from St. Anthony's, you've never really filed a form to the Victim Assistance Program, have you?  A: I thought I was when I gave him the packet.
> Q: Have you ever had any follow-up bills from St. Anthony? A: Yeah, I'm sure.
> Q: You're not sure you've actually gotten repeat bills then, do you [sic]?  A: Like I said, I've been homeless five months out of this last year and I get my mail at my dad's whenever I can.
> Q: Okay.  And have bills that have come to your dad's place, are any of them from St. Anthony?  A: Yes.
> Q: You've opened those bills?  A: Yes.
> Q: And what is the last date of the last bill from St. Anthony? A: I don't know.  It's kind of a bad memory.  I don't even like to open them.
> Q: Do you have a copy of any of those bills?  A: Not with me, I don't.  Like I said, I didn't know I was supposed to be here today.  I was told I did not have to be here today.
> Q: So, again, we don't have any kind of written proof you actually owe $16,450.40 to St. Anthony, do we?  A: Well, they're right next door.  I'm sure we could find out?

Without any exhibit showing an amount due, Helkenn's conjecture about the amount of the medical bills was too speculative to provide a reasonable basis to award restitution for these expenses. When counsel asked if the total amount was $16,450.40, Helkenn answered, "I guess." Claiming he had not prepared for the hearing because he did not believe he had to attend, Helkenn failed to recall the total amount or produce documents supporting his claims for medical expenses. His testimony regarding bills he had received revealed he could not remember with specificity when bills came or the last bill he had seen. Likewise, the testimony failed to clarify if the medical billing was submitted to and paid by the Crime Victim's Assistance Program.

Under these circumstances, we hold there was not substantial evidence for the award for medical bills in the amount of $16,450.40. We vacate the portion of the restitution order pertaining to Helkenn's medical bills and remand to the district court for further proceedings to determine the amount of these expenses.

**IV. Disposition.**

We affirm in part and vacate in part the district court restitution order and remand for further proceedings on the amount of restitution for Helkenn's medical expenses.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**