# IN THE COURT OF APPEALS OF IOWA

No. 20-0371
Filed March 17, 2021

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**EDNA JEAN WILSON,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

Edna Wilson appeals following her convictions for interference with official acts and possession of cocaine, second offense. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard Bennett, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

Edna Wilson appeals her convictions for interference with official acts, in violation of Iowa Code section 719.1 (2019), and possession of cocaine, second offense, in violation of section 124.401(5). She claims the district court erred in denying her motion to suppress after the police illegally entered her home. We affirm.

**I. Background Facts and Proceedings**

On July 5, 2019, Ames police were dispatched to an apartment building for a noise complaint. Officer Jamie Miller was the first to respond. He proceeded to the second floor. He could hear loud noise emitting from one of the apartments. Officer Miller knocked on the door. A woman partially opened the door but remained inside the apartment. Officer Miller asked the woman, later identified as Wilson, for her name. Wilson provided the name Ebony. Officer Miller then asked if Wilson had any identification. Wilson responded she did not.

Officer Miller continued to ask Wilson for her full name and identification. The conversation turned argumentative. Loud noises continued to emit from inside the apartment. Officer Adam McPherson arrived to assist Officer Miller.

A few minutes after the encounter started, Wilson attempted to shut the door on Officer Miller. Officer Miller "put [his] left hand up on to the doorway to keep it from shutting, and then [he] put [his] foot . . . into basically the threshold jam area to prevent it from shutting." His foot was "approximately six inches forward next to the bottom of the door." He again requested Wilson's name. After glancing at Officer Miller's name badge, Wilson provided the name Destiny Millers.

By this point, the officers believed Wilson was not being truthful about her identity. Officer Miller advised Wilson "that providing false information in this situation is something that could lead to her arrest." The officers contacted dispatch but were unable to verify the information Wilson had given them. After checking the apartment's utilities account, Officer McPherson asked Wilson if her name was Edna Wilson. Wilson confirmed that was her real name.

Officer Miller then advised Wilson that she was under arrest and stepped over the threshold of the apartment. Officer Miller attempted to secure one of Wilson's arms. Wilson resisted. Officer McPherson then stepped into the apartment. Officer McPherson attempted to secure Wilson's other arm. Wilson continued to physically resist the officers. Officer Miller received a cut to his left forearm and several red marks resembling scratch marks. After a brief struggle, the officers secured Wilson in handcuffs.

During the tussle, Officer McPherson observed Wilson throw a glass vial on the floor. The officers then observed a white powder in and near the glass vial that Wilson had thrown. The powder later tested positive for cocaine. They also observed marijuana on a table located near the front door.

Officer McPherson requested additional officers. Officer Miller, Officer McPherson, and Wilson stayed near the front door of the apartment while waiting for other officers to respond. Once other officers arrived to secure the apartment, Officer Miller transported Wilson to the police department.

Officer McPherson obtained a search warrant for any controlled substances that may be located within Wilson's apartment. He seized cocaine, marijuana, and paraphernalia.

The State charged Wilson with (1) interference with official acts causing bodily injury, a serious misdemeanor, in violation of section 719.1(1)(a) and (c); (2) possession of marijuana, second offense, a serious misdemeanor, in violation of section 124.401(5); and (3) possession of cocaine, second offense, an aggravated misdemeanor, in violation of section 124.401(5).

Wilson filed a motion to suppress the drugs found in her apartment. She claimed officers violated her privacy rights by entering her home without a warrant and then used information gained by their illegal entry to obtain a search warrant. After a hearing on the matter, the district court denied her motion.

The State amended Wilson's charges to include only: (1) interference with official acts, a simple misdemeanor, in violation of section 719.1(1)(a) and (2) possession of cocaine, second offense, an aggravated misdemeanor, in violation of section 124.401(5). Wilson proceeded to a bench trial on the stipulated minutes of testimony. The court found her guilty of both crimes. Wilson appeals.

**II. Standard of Review**

Wilson claims the district court should have granted her motion to suppress based on the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. So our review is de novo. *See State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018). We make "an independent evaluation of the totality of the circumstances." *Id.* (citation omitted). And we evaluate this case "in light of its unique circumstances." *Id.* (citation omitted).

**III. Analysis**

As Wilson points out, the Fourth Amendment is "substantially identical" to section 8. Here are their texts:

| Fourth Amendment of the United States Constitution | Article 1, section 8 of the Iowa Constitution |
|---|---|
| The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. | The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized. |

We recognize, of course, that our supreme court has authority to "follow an independent approach" when interpreting our state constitution. *State v. Brown*, 890 N.W.2d 315, 322 (Iowa 2017) (citation omitted). As Wilson notes, though, "[g]iven the similar wording of the Fourth Amendment and Iowa's search and seizure clause, these provisions have generally been considered to be 'identical in scope, import, and purpose.'" *See State v. Beckett*, 532 N.W.2d 751, 755 (Iowa 1995). And while Wilson cites both constitutions, her appellate brief focuses on Fourth Amendment jurisprudence; it does not propose an "independent state constitutional standard." *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012) (citation omitted). The State's brief follows Wilson's lead and focuses on the Fourth Amendment. We do the same.

Here we consider the first clause of the Fourth Amendment, sometimes called the "Reasonableness Clause." *See, e.g.*, *Michigan v. E.P.A.*, 576 U.S. 743, 755 (2015). It protects "the people" against "unreasonable" intrusions into their "persons, houses, papers, and effects." U.S. Const. amend. IV.

"But when it comes to the Fourth Amendment, the home is first among equals." *Florida. v. Jardines*, 569 U.S. 1, 6 (2013). "At the Amendment's 'very core' stands 'the right of [the people] to retreat into [their] own home[s] and there

be free from unreasonable governmental intrusion.'" *Id.* (citation omitted). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972).

And so courts "usually require" that intrusions into a home "be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be)." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Our supreme court has said warrantless intrusions into homes are "presumptively unreasonable" and "will not be sanctioned, 'subject only to a few specifically established and well-delineated exceptions.'" *State v. Reinier*, 628 N.W.2d 460, 464 (Iowa 2001) (citations omitted); *see Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").

With this background in mind, we consider the parties' positions. Wilson argues Officer Miller violated the Fourth Amendment when he "conducted a warrantless entry into Wilson's home" by placing "his hand on the door and his foot in the doorway to prevent Wilson from closing the door as he spoke with her." And Wilson claims this "intrusion into her home was not justified by any exception to the warrant requirement." So, in Wilson's view, "[a]ll evidence obtained from the warrantless entry must be suppressed, including all evidence obtained from the subsequent search warrant derived from the illegal entry."

The State disagrees. For starters, the State offers several reasons to believe there was no Fourth Amendment violation. For example, the State contends Wilson's "act of opening her door and standing in the threshold, in response to [Officer Miller]'s knock, placed her in a public place" and, therefore, outside the Fourth Amendment's special protections for the home. *See United States v. Santana*, 427 U.S. 38, 42 (1976) (holding that defendant, standing on the threshold of one's dwelling, was in a "public" place and, therefore, "was not in an area where she had any expectation of privacy"). Because Wilson was in a public place, the State argues, police officers were free to arrest her "for an offense committed or attempted in their presence," including disorderly conduct (the noise emitting from her apartment) and providing false identification information (her fake names). *See* Iowa Code § 804.7(1); *see also United States v. Watson*, 423 U.S. 411, 423–24 (1976) (holding warrantless public arrests on probable cause do not violate the Fourth Amendment). These violations permitted the officers' minimal entry into Wilson's apartment to complete the arrest. *See State v. Legg*, 633 N.W.2d 763, 773 (Iowa 2001) (holding an officer who had probable cause to arrest defendant for a serious misdemeanor committed in a public place could enter defendant's garage to complete the arrest). And so, in the State's view, there was no constitutional violation.

As a fallback, the State contends that—even if the Fourth Amendment was violated—the exclusionary rule does not apply and, therefore, suppression was not required. We agree.

The "exclusionary rule" is the principle that courts should generally suppress evidence "discovered as a result of illegal government activity," such as an

unauthorized home invasion. *State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007). This rule may also prevent the "introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search." *Id.* (citation omitted). We sometimes call this the "fruit of the poisonous tree" doctrine. *Id.* (citation omitted).

The exclusionary rule advances important goals by deterring "lawless police conduct" and protecting "the integrity of the judicial system." *Id.* at 681. But it also "generates 'substantial social costs,' which sometimes include setting the guilty free and the dangerous at large." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (citation omitted). And so our courts recognize "several exceptions to the rule." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016); *see also Hudson*, 547 U.S. at 593–626 (describing independent source, inevitable discovery, and attenuation exceptions).

One of them is called the "new-crime exception." *See State v. Pranschke*, No 16-1104, 2017 WL 2461556, at *5 (Iowa Ct. App. June 7, 2017) (collecting cases); *see also* 6 Wayne R. LaFave, *Search & Seizure* § 11.4(j) (6th ed. Sept. 2020). Our supreme court adopted a version of the new-crime exception in *State v. Dawdy*, 533 N.W.2d 551, 555–56 (Iowa 1995). *See Pranschke*, 2017 WL 2461556, at *6 (noting "[t]he Iowa Supreme Court has expressly approved and adopted the Eighth Circuit's acceptance of what is essentially the new-crime exception"). The court explained in *Dawdy*:

> Even though an initial arrest is unlawful, a defendant has no right to resist the arrest. If the defendant does so, probable cause exists for a second arrest for resisting. A search incident to the

second arrest is lawful. *United States v. Bailey*, 691 F.2d 1009, 1016–18 (11th Cir. 1982) (even assuming initial arrest of defendant was unlawful, defendant had no right to flee and to strike agent in effort to escape attempts to recapture him, and thus probable cause existed for second arrest for resisting arrest, and search of defendant incident to the second arrest was lawful).

Strong policy reasons underlie this rule. As *Bailey* notes,

[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct. . . . [E]xtending the fruit [of the poisonous tree] doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct.

533 N.W.2d at 555 (first three alterations in original); *see United States v. Dawdy*, 46 F.3d 1427, 1430–31 (8th Cir. 1995), *cert. denied*, 516 U.S. 872 (1995)); *see also Smith v. State*, 542 N.W.2d 567, 569 (Iowa 1996) ("For example, one may be guilty of the crime of resisting arrest even if the initial arrest is illegal.").

We believe the new-crime exception applies here. We assume without deciding that the Fourth Amendment was violated when Officers Miller and McPherson entered Wilson's home and arrested her. But when Wilson *resisted* arrest, she created probable cause that she was committing a new crime. *See* Iowa Code § 804.12 ("A person is not authorized to use force to resist an arrest, either of the person's self, or another which the person knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if the person believes that the arrest is unlawful or the arrest is in fact unlawful."). This provided officers with lawful grounds to arrest Wilson inside her apartment. So there were no grounds to suppress narcotics

evidence discovered incident to the arrest. *See Dawdy*, 533 N.W.2d at 555; *see also Pranschke*, 2017 WL 2461556, at *6.

## IV. Conclusion

The district court correctly denied Wilson's motion to suppress. So we affirm Wilson's convictions.

**AFFIRMED.**